Judge Roland L. Belsome
| iThis is a medical malpractice case arising out of a kidney donation and transplant. The plaintiff, Jarrard Green donated a kidney to his sister Bernadine Green.[1] Due to complications after the transplant, the donated kidney died. Subsequently, this lawsuit was filed alleging medical malpractice and lack of informed consent. The defendants, Dr. Joseph Buell, Dr. Douglas Slakey, and Tulane University Hospital, filed a motion for summary judgment. The trial court granted the motion for summary judgment dismissing the plaintiffs claims against the defendants. For the reasons that follow we affirm.

Statement of Facts

In 2009, Bernadine Green was suffering from end-stage renal disease and was on peritoneal dialysis. Given her condition, Ms. Green was in need of a kidney transplant. She was provided information on the transplant process and consented to be evaluated for a transplant. Later, it was determined that her brother Jarrard Green would be her kidney donor.
|aOn May 11, 2010, Ms. Green underwent surgery. The living-related renal transplant was performed by Dr. Joseph Buell. In the days that followed, the kidney failed and ultimately had to be removed. Ms. Green underwent several procedures during the days leading up to the kidney being removed. The transplant and all subsequent procedures became the subject of the medical malpractice complaint and lawsuit.
Shortly after Ms. Green’s release from the hospital, she and Jarrard Green initiated a Medical Review Panel process. The Medical Review Panel rendered an opinion that found in favor of the healthcare providers determining that the doctors did not breach the applicable standard of care. Following that finding, Jarrard Green and Bernadine Green filed a medical malpractice lawsuit alleging negligence and lack of informed consent.
In April 2016, approximately two years after the filing of the lawsuit and approximately six years from the initiation of the Medical Review Panel, the defendants filed motions for summary judgment on the grounds that the plaintiff lacked the expert testimony necessary to support the allegations in the petition. After a hearing on the motions for summary judgment, the trial court ruled in favor of the defendants. This appeal followed.

Assignment of Error

On appeal, the plaintiff contends that the trial court erred in granting summary judgment because an expert is not necessary to prove his claims and | sthere are genuine issues of material fact as to the negligence and the lack of informed consent.

Standard of Review

This Court reviews the granting of a motion for summary judgment under a de novo review. A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La.C.C.P. art. 966(B). Under La. C.C.P. art. 966(D)(1), “if the mover will not bear the burden of proof at trial on the matter that is before the court on the *718 motion for summary judgment, the mover’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense.”[2] Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to . satisfy his evidentiary burden of proof at trial, there is ho genuine issue of material fact.[3]

Discussion

On appeal, Jarrard Green argues that that the trial court erred in its granting of summary judgment on the issue of negligence and lack of informed consent due to the failure to obtain an expert witness. We disagree.
| ¿This case involves the healthcare providers’ alleged malpractice in performing a kidney transplant, as well as their failure to properly inform the patients of the risks involved with the procedures. The transplant occurred in 2010. In 2014, the Medical Review Panel issued its opinion and reasons finding that there was no evidence that the healthcare providers failed to meet the applicable standard of care. The motions for summary judgment filed by the healthcare providers and the hospital were argued before the trial court on June 24, 2016. At that time, the plaintiff had failed to retain an expert witness to support his claims.
The motions for summary judgment filed by the defendants contained the following evidence; 1) the medical review panel’s unanimous decision; 2) the plaintiffs supplemental responses to interrogatories confirming that no expert had been identified; and 3) numerous consent forms signed by Jarrard Green, Bernadine Green, or a representative on her behalf. In opposition to the motions for summary judgment, the plaintiff attached affidavits from Jarrard Green and Bernadine Green, and multiple printouts from medical information websites.
The defendants objected to the opposition filed by the plaintiff on several grounds. First, the filing of the opposition was untimely. In accordance with La. C.C.P. art. 966(B)(2), the opposition to a motion for summary judgment and all corresponding documents shall be served on the parties not less than fifteen days prior to the hearing. In this case, the opposition was filed just eight days prior to the hearing. Additionally, the exhibits attached to the opposition included ^documents that did not comply with La C.C.P. article 966(A)(4). Article 966 provides that “[t]he only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions.”[4] The trial court did not expressly rule on the motion to strike but did recognize, on the record, the inadmissibility of certain documentation presented when considering the merits of the motions for summary judgment.
The sole issue before this Court is whether the plaintiff can prove his allegations of medical malpractice without the testimony of an expert witness. The allegations of the petition in this case involve the medical procedures undergone by Jarrard Green as a kidney donor and Bernadine Green as the kidney recipient. Bernadine Green underwent a living-related renal transplant on May 11, 2010. In the days *719 following the initial procedure, ultrasounds were performed to examine kidney function. Due to a decreased flow in the kidney an exploratory laparotomy and biopsy was done. On May 17, 2010, the kidney was non-functioning and had to be removed.
For a plaintiff to be successful in a medical malpractice action, he must prove by the preponderance of the evidence:' 1) the applicable standard of care pertaining to the defendant; 2) the breach of that standard of care; and 3) a causal connection between the breach and the damages suffered by the plaintiff.[5] Generally, in order to establish the standard of care and whether that standard was | ^breached in a medical malpractice case, expert testimony is required. The exception to that requirement is when the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony.[6]
Cases in which expert testimony has been deemed unnecessary present instances “where the physician does an obviously careless act, such as fracturing a leg during examination, amputating the wrong arm, dropping a knife, scalpel, or acid on a patient, or leaving a sponge in a patient’s body.... ”[7] Here, we are faced with alleged malpractice relating to a kidney transplant and other related procedures. Clearly, a layperson could not ascertain the standard of care in such a procedure without the guidance of an expert. Because the. plaintiff failed to produce an expert opinion that establishes the defendants breached the standard of care, the trial court was correct in granting summary judgment on the issue.
In addition to the negligence claim asserted by the plaintiff, he has also alleged a lack of informed consent.[8] The defendants’ exhibits in support of the motions for summary judgment include nine signed consent forms. The forms appear to be signed by Jarrard Green, Bernadine Green, or by a relative on behalf of Bernadine Green. However, the affidavits each provide the same general denial that Jar-rard Green and Bernadine Green were never provided information on the risks of the procedures or alternatives to the procedures and no written or oral | ^consent was obtained 'from either patient.[9] More specifically, the plaintiffs complaint regarding the lack of informed consent is based on the insufficiency of the risk involved with the transplant, mainly clotting,[10] His assertion is that this was what lead to the transplant failing.
In Hondroulis v. Schuhmacher, the Louisiana Supreme Court presented the fundamental principles of the informed consent doctrine as follows:
The informed consent doctrine is based on the principle that every human being of adult years and sound mind has a right to determine what shall be done *720 to his or her own body. Surgeons and other doctors are thus required to provide their patients with sufficient information to permit the patient himself to make an informed and intelligent decision on whether to submit to a proposed course of treatment. Where circumstances permit, the patient should be told the nature of the pertinent ailment or condition, the general nature of the proposed treatment or procedure, the risks involved in the proposed treatment or procedure, the prospects of success, the risks of failing to undergo any treatment or procedure at all, and the risks of any alternate methods of treatment.[11]
In order to establish a lack of informed consent a plaintiff must prove the non-disclosure of a material risk and that there was a causal relationship between the non-disclosed risk and the patient’s damages. Hondroulis, explained that “a risk is material when a reasonable person in what the doctor knows or should know to be the patient’s position, would be likely to attach significance to the risk or cluster of risks in deciding whether or not to forego the proposed therapy.”[12] Therefore, materiality is a two-step process. The first step requires the identification of the risk and the probability of the risk occurring. The Hondroulis^Court held that to establish that first step of proving materiality “some expert testimony is necessary to establish this aspect of materiality because only a physician or other qualified expert is capable of judging what risks exists and the likelihood of occurrence.”[13] The second step focuses on whether a reasonable person in the patient’s position would consent to the procedure given the probability of known risks.
Once the defendants established the absence of factual support for the plaintiffs claims, the burden was on the plaintiff to establish that the defendants were not entitled to judgment as a matter of law. In this case, it was necessary to present the opinion of an expert witness in order to meet that burden; the plaintiff failed to do so. Accordingly, we find no error on the part of the trial court in granting the motions for summary judgment and dismissing the plaintiffs claims with prejudice.
AFFIRMED
LOBRANO, J„ CONCURS IN THE RESULT

. Mr. Green is the plaintiff individually and on behalf of his deceased sibling Bernadine.

. La. C.C.P. art. 966(D)(1).

. Id.

. La. C.C. P. art. 966.

. Schultz v. Guoth, 10-0343, p. 5 (La. 1/19/11), 57 So.3d 1002, 1005.

. Id.

. Pfiffner v. Correa, 94-0924, 94-0963, 94-0992 (La. 10/17/94), 643 So.2d 1228, 1233-34.

. On the issue of lack of informed consent, the hospital’s grounds for motion for summary judgment was that the duty to inform rests with the physicians not the hospital. See La.R.S.40:1157.2(P).

. Although Bernadine Green’s affidavit disputes a signature on “Exhibit A,” there is no Exhibit A attached to the affidavit, nor is there any indication in the record what Exhibit A is purported to represent.

. The Medical Review Panel addressed these issues finding no breach of the standard of care in the patient’s diagnostic workup prior to the transplant.

. Hondroulis v. Schuhmacher, 553 So.2d 398, 411 (La. 1988)

. Id. at 412.

. Id.