Judgment rendered September 21, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,764-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SIERRA FRAC SAND, LLC                    Plaintiff-Appellant

versus

JULIAN WHITTINGTON, SHERIFF,             Defendants-Appellees
BOBBY EDMISTON, ASSESSOR,
AND LOUISIANA TAX
COMMISSION

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 164,067

Honorable Charles A. Smith, Judge

* * * * *

KEAN MILLER LLP                          Counsel for Appellant
By: Angela W. Adolph
    William R. Huguet

BRIAN A. EDDINGTON                       Counsel for Appellee,
                                         Bobby Edmiston, Assessor
                                         for Bossier Parish

LANGLEY & PARKS, LLC                     Counsel for Appellee,
By: Glenn L. Langley                     Julian Whittington,
                                         Sheriff for Bossier Parish

FAIRCLOTH MELTON SOBEL, ET AL            Counsel for Appellee,
By: Franklin A. Hoffman                  Louisiana Tax Commission

ROBERT D. HOFFMAN, JR.

* * * * *

Before MOORE, PITMAN, and COX, JJ.

**MOORE, C.J.**

Sierra Frac Sand, LLC ("Sierra"), appeals a summary judgment in favor of one defendant, Bobby Edmiston, assessor for Bossier Parish, that dismissed Sierra's claims for refund of tax paid under protest and for violation of equal protection in the processing of applications for the Industrial Tax Exemption Program ("ITEP"), La. Adm. C., T. 13, Pt. 1, § 503. For the reasons expressed, we affirm and remand.

## FACTUAL BACKGROUND

Sierra is a company that mines native quartz sand and processes it to make proppant, the abrasive used in frac drilling. According to statements in brief, Sierra is based in Texas but, in 2017, it opened a facility in Plain Dealing, in Bossier Parish, Louisiana.

Sierra filed a two-page "Petition for Refund of Taxes Paid Under Protest" on January 28, 2021, naming as defendants Julian Whittington, Sheriff; Bobby Edmiston, Assessor; and the Louisiana Tax Commission as defendants. It alleged that "in prior years," Sierra had applied for exemptions under ITEP, and these exemptions were denied; however, applications filed by other "similar companies" had been granted and their property treated as exempt, resulting in selective tax treatment that was discriminatory and unconstitutional. Finally, it alleged that it had tendered the disputed tax, $224,215.94, with the statutory notices of intent to sue, and filed suit timely.

The Assessor answered asserting that Sierra had never applied for any tax exemption, and generally denying the other claims.

## PROCEDURAL HISTORY

In June 2021, the Assessor moved for summary judgment on grounds that Sierra's first ITEP application was not filed until March 2021, six weeks *after* this petition. In support, it filed the affidavit of Kristen Cheng, ITEP program administrator at the Louisiana Department of Economic Development ("LED"). She stated that Sierra had filed an *advance notification* of intent to apply for ITEP on December 18, 2018, but did not file an actual *application* until March 16, 2021. The Assessor argued he was entitled to summary judgment because Sierra's assertions "never happened."

Shortly after this, the other defendants filed general denials; these parties are not involved in the instant appeal.

Sierra then filed a motion for leave to file a "First Amending and Supplemental Petition." This alleged that Sierra started a capital improvement project at its Plain Dealing site in 2018 ("the 2018 Project") and filed an advance notification with LED on December 18, 2018; the project was completed, and the assets therein placed in service, by December 18, 2020; according to the Constitution, laws, rules, and regulations, Sierra was entitled to a partial exemption of those assets for 10 years, starting one year after they were placed in service. However, when the tax bill arrived, Sierra found the 2018 Project assets were fully taxed; Sierra disputed this, but paid the taxes under protest. Sierra also alleged that under the ITEP system, its application was due within 90 days after the end of construction, and it filed the application on March 16, 2021, timely and in compliance with all rules and regulations. Further, before LED will grant an exemption, it must receive proof of millage from the parish assessor; Sierra alleged that

2

LED had requested this information from the Assessor, but he refused to provide it, and this was the only reason LED had not reviewed Sierra's application. Sierra sought an order directing the Assessor to give this information to LED.

The district court set a hearing on Sierra's rule for November 15, 2021, but the minutes do not show any hearing was held that day, and the record shows no ruling on Sierra's motion for leave to amend.

Sierra also filed an opposition to the Assessor's MSJ. This asserted that Sierra had first tried to get an exemption on an earlier project, "the 2017 Project," but was frustrated on technical grounds (its NAICS code was wrong); Sierra's manager, Kip Amick, viewed this as a denial of her request, but she was still pursuing it. However, when Sierra started its 2018 expansion, it hired a Louisiana tax consultant (identified in the exhibits as Didier Consultants, of Zachary, La.), who submitted a "local property tax abatement request" for the 2018 Project. When Sierra received its 2020 tax bill, Ms. Amick saw that it included 2018 Project assets that she believed would be exempt. She "researched the public records" and found "other manufacturers in Bossier Parish that had applied for the property tax abatement"; these companies had not yet received an abatement contract from LED, yet *their property* was not on the rolls. Then, Ms. Amick "was recently advised" that LED would not approve the application because the Assessor would not provide Sierra's proof of millage to LED. Sierra quoted the deposition of LED's program director, Ms. Cheng, who said this was the first time she had ever seen such a refusal, and it was the only reason LED had not approved the application. Finally, Sierra argued that until the

3

district court rules on the motion for leave to file the amending and supplemental petition, the Assessor's MSJ was "premature." In support, Sierra attached Ms. Amick's affidavit, including "Exhibit F," 50 pages of printouts of "public records," none verified by the agency that allegedly posted them (most not even showing the agency of origin). Sierra also attached Ms. Cheng's deposition, including roughly 90 pages of emails between Ms. Cheng, Ms. Amick, and Sierra's tax consultant.

The Assessor promptly filed a memo in support of his MSJ, asserting that Sierra's position was "smoke and mirrors" and failed to address the main issues: whether Sierra ever applied for, and was denied, an ITEP exemption; and whether similar applications from similar companies were approved. He assailed Ms. Amick's affidavit as not based on firsthand knowledge (it was replete with qualifiers like "has been advised" and "is not aware"). He added that any issues raised by the amending and supplemental petition were not before the court, as leave to amend had not yet been granted (and would likely be denied). Finally, he argued that the real purpose of Sierra's suit was to salvage its own poor tax planning: LED will not grant an exemption for any year for which taxes have already been paid; Sierra's payment under protest, and suit to recover, were a charade to make it appear that the company did not pay those taxes, when in fact it did and was thus disqualified from the exemption.

## ACTION OF THE DISTRICT COURT

The MSJ came for a hearing on September 14, 2021. Questioned by the court, counsel for Sierra admitted that its ITEP application has never been denied. If that is the case, the court asked, how could Sierra know it

was being treated unequally? Counsel replied that the Assessor put Sierra's property "on the rolls" while its application was pending, but not other applicants' property. Counsel for the Assessor reiterated that the issues raised by the amending and supplemental petition were "not before the court at this time."

The court ruled from the bench that there was no issue of material fact. Rather, Sierra was "in the box they got placed in": the company was not exempt yet, so the taxes were due; if the exemption is later granted, that will be another issue. The court rendered judgment and dismissed, with prejudice, Sierra's petition for refund of taxes paid under protest.

Sierra appealed suspensively.

## APPLICABLE LAW

The State Board of Commerce and Industry or its successor, with the approval of the governor, may enter into contracts for the exemption from ad valorem taxes of a new manufacturing establishment or an addition to an existing manufacturing establishment, on such terms and conditions as the board, with the approval of the governor, deems in the best interest of the state. La. Const. art. 7, § 21(F). Known as the Industrial Tax Exemption Program, the purpose of ITEP is to provide an incentive for businesses to locate and/or expand in Louisiana, thereby increasing employment opportunities and boosting state and local economies. *Robinson v. Ieyoub*, 97-2204 (La. App. 1 Cir. 12/28/98), *writs denied*, 99-0933, -0981 (La. 9/17/99), 747 So. 2d 1096, 1097. All property exempted under ITEP shall be listed on the assessment rolls and submitted to the La. Tax Commission

5

or its successor, but no taxes shall be collected thereon during the period of exemption.  La. Const. art. 7, § 21(F).

An *advance notification* of intent to apply for tax exemption shall be filed with LED on the prescribed form prior to the beginning of construction or installation of facilities on all projects for tax exemptions (subject to certain regulatory exceptions inapplicable here).  The advance notification will expire and become void if no application is filed within 12 months of the estimated project ending date stated in the advance notification.  La. Adm. C., T. 13, Pt. I, § 503 A.  An *application* for tax exemption may be filed with LED on the prescribed form, either concurrent with or after filing the advance notification, but no later than 90 days after the beginning of operations or end of construction, whichever occurs first.  La. Adm. C., T. 13, Pt. I, § 503 C(1).

All property subject to taxation, including merchandise and stock in trade, shall be placed upon the assessment lists in the respective parishes or districts where situated.  Assessments shall be made on the basis of the condition of things existing on the first day of January of each year (subject to certain exceptions inapplicable here).  La. R.S. 47:1952 A; *Comm-Care Corp. v. Bishop*, 96-1711 (La. 1/21/98), 706 So. 2d 425.

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief sought by a litigant.  *Murphy v. Savannah*, 18-0991 (La. 5/8/19), 282 So. 3d 1034.  The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of civil actions (except for certain domestic matters) and is favored by our law.  La. C.C.P. art. 966 A(2).  A court must

6

grant a motion for summary judgment if, after an opportunity for adequate discovery, the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 A(3); *Murphy v. Savannah*, *supra*. Appellate review of a summary judgment is de novo, with the appellate court using the same criteria that governed the trial court's determination, i.e., whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. *Murphy v. Savannah*, *supra*; *Watts v. Party Central Family Fun Ctr.*, 54,171 (La. App. 2 Cir. 1/12/22), 336 So. 3d 1279, *writ denied*, 22-00279 (La. 4/12/22), 336 So. 3d 81.

The only documents that may be filed in support of or in opposition to the motion for summary judgment are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P. art. 966 A(4). Supporting and opposing affidavits shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. La. C.C.P. art. 967. Unsworn or unverified documents, such as letters and reports, are not self-proving and will not be considered on summary judgment. *Thomas v. Bayonne*, 54,205 (La. App. 2 Cir. 4/13/22), 339 So. 3d 71; *Chanler v. Jamestown Ins. Co.*, 51,320 (La. App. 2 Cir. 5/17/17), 223 So. 3d 614, *writ denied*, 17-01251 (La. 10/27/17), 228 So. 3d 1230. A computer printout from a website is generally not admissible if it is not certified, authenticated, or supported by personal knowledge of the contents. *Dumas v. Angus Chem.*

7

*Co.*, 31,969 (La. App. 2 Cir. 8/20/99), 742 So. 2d 655, *writ not cons.*, 99-2750 (La. 11/5/99), 751 So. 2d 237 (printout of menu to be checked off by individual claimants); *Green v. Buell*, 16-0873 (La. App. 4 Cir. 4/5/17), 215 So. 3d 715 (printouts from medical information websites); *Hebert v. Taco Bell Corp.*, 613 So. 2d 729 (La. App. 4 Cir. 1993) (printout of complaint records from NOPD).

**DISCUSSION**

By its first and second assignments of error, Sierra urges that the district court erred in granting summary judgment, and in failing to recognize numerous material facts in dispute that precluded entry of judgment as a matter of law. These assignments lack merit.

Sierra alleged, in its original petition, that it had applied for exemptions under ITEP, these applications were denied, and this result was inequitable, as similar applications had been granted. The Assessor's MSJ showed, with the affidavit of Ms. Cheng, the ITEP administrator, that Sierra had filed an *advance notification* on December 18, 2018, but did not file an actual *application* until March 16, 2021, *after* this suit was filed, and that its application had never been acted on. Sierra offered no summary judgment evidence to counter this. In short, the evidence refutes the entire premise of Sierra's claim – that its application had been denied. The district court was not wrong to find no genuine issue of material fact.

In light of Ms. Cheng's affidavit (as well as her deposition, offered by Sierra), we must reject a large portion of Sierra's brief arguing that the Assessor used Sierra's application on the "stalled" 2017 Project as a means to dismiss a refund on its 2018 Project. Ms. Cheng established that the

8

advance notification filed on December 18, 2018, was the *only* ITEP filing Sierra made until after this suit was filed, and the Assessor's answer and MSJ never referenced any other project. On this record, any claim of confusion or subterfuge on the part of the Assessor is unsupported.

We must also reject the large portion of Sierra's brief arguing that "public records" proved disparate and unconstitutional treatment of ITEP applications. Sierra cites Ms. Amick's affidavit, "Exhibit F," comprising 50 pages of printouts of "public records," none verified by the agency that allegedly posted them, and most not showing the agency of origin. As these pages were not verified or authenticated, and Ms. Amick had no firsthand knowledge about how the data was compiled or whether it was accurate, these simply do not qualify as summary judgment evidence. La. C.C.P. art. 967; *Dumas v. Angus Chem.*, *supra*; *Green v. Buell*, *supra*; *Hebert v. Taco Bell*, *supra*. Even if these printouts were admissible, we would note that they display projects dating between 2007 and 2016; ITEP rules changed in 2018, so it is impossible to tell if any of the displayed projects are situated similarly to Sierra's. Notably, all displayed projects appear to show "Application Board Approval" dates, a status that Sierra has not yet attained. In short, Sierra has not presented a genuine issue as to disparate treatment.

Nevertheless, we recognize the incongruity of the fact that tax rolls must be fixed "on the basis of the condition of things existing" on January 1 of each year, La. R.S. 47:1952 A, while a timely ITEP application need only be filed 90 days after the completion of construction, La. Adm. C. Tit. 13, Pt. I, § 503 C(1). In this system, if a project is completed in the final months of the year and the ITEP application is timely and valid, but approved only

9

after the start of the next year, the property will be enrolled as taxable for that year because that was its status as of January 1. While this does appear to be a trap for the unwary, we are aware of no authority to contravene R.S. 47:1952 and authorize a retroactive ITEP exemption.

By its third assignment of error, Sierra urges that the district court erred in failing to consider the motion for leave to file a first amending and supplemental petition, and the allegations asserted therein, before granting summary judgment. As noted, the Assessor filed its MSJ regarding Sierra's original petition seeking a refund of taxes paid under protest. After this, Sierra sought leave to file a new petition that would add allegations regarding millage verification and about the 2018 Project, for which the application is still pending.

Simply put, the MSJ did not address the proposed amending and supplemental petition, and the district court has not ruled on the motion for leave to file it. In his reply memo in support of MSJ, the Assessor argued that "the claims set forth in the Amending and Supplemental Petition are not before the Court at this time"; later, at the hearing, counsel for the Assessor conceded that the "claims raised in the supplemental amending petition * * * can only be granted at some point in the future, they're not before the Court today." We agree; the motion for leave is still pending, and the matter must be remanded to the district court for resolution. We express no view as to whether the district court should grant or deny this motion.

## CONCLUSION

For the reasons expressed, the summary judgment in favor of Bobby Edmiston, Assessor for Bossier Parish, and dismissing the original petition

10

of Sierra Frac Sand, LLC, is affirmed.  The case is remanded for resolution of Sierra Frac Sand's motion for leave to file an amending and supplemental petition.  Costs are to be paid by Sierra Frac Sand.

**AFFIRMED AND REMANDED.**